# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. ANTWONE TERRY.

**Direct Appeal from the Circuit Court for Lake County**
**No. 97-CR-7719     R. Lee Moore, Jr., Judge**

---

**No. W1999-00355-CCA-R3-CD - Decided April 4, 2000**

---

The defendant/appellant, Antwone Terry, appeals as of right from a conviction for aggravated assault by a Lake County jury. The Lake County Circuit Court imposed a sentence of ten (10) years, Range III, to run consecutively to the current sentences the defendant is presently serving in the Department of Correction. The defendant presents one appellate issue: whether the trial court erred in permitting oral testimony as to the contents of the defendant's alleged written and tape-recorded statement, where neither an original nor a copy of either was placed in evidence, over the defendant's objection.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

LAFFERTY, SR. J., delivered the opinion of the court, in which TIPTON, J., and WELLES, J., joined.

C. Michael Robbins, Memphis, Tennessee, Jim. W. Horner, District Public Defender and H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee, for the appellant, Antwone Terry.

Paul G. Summers, Attorney General & Reporter and Clinton J. Morgan, Counsel for the State, for the appellee, State of Tennessee.

## OPINION

Tommy Crawford, a correctional officer for the Northwest Correction Center, testified that he was working on July 23, 1997, at the Academic School. His duties as a security officer were to control movement between eleven (11) to twelve (12) classrooms. Officer Crawford is not armed and his only means of communication is a radio. He stated that there were about two hundred and fifty (250) inmates in the building in which smoking is not permitted. According to Officer Crawford, he was in the process of assigning the inmates to their classrooms the morning of July 23, when he noticed that the defendant was standing in the hall and smoking. At the same time, a telephone was ringing. As Officer Crawford passed by the defendant to answer the telephone, he told the defendant to put his cigarette out, to which there was no response by the defendant. Upon his return, the officer again told the defendant to put his cigarette out. The defendant grabbed Officer Crawford, striking him and knocking him down. Officer Crawford stated that he had a cup of coffee in his hand at the time. The officer testified that he had no prior problems with the

defendant. The officer sustained a broken hip, which required surgery. Presently, Officer Crawford has four (4) six (6) inch pins in his hip due to the injury and cannot return to work. Officer Crawford stated that there were approximately one hundred (100) inmates in the hallway when the attack occurred.

Lewis Rodriguez, a correctional officer, testified that on July 23, 1997, the defendant went to school, returned about forty (40) minutes later, and told Rodriguez that he needed to talk to him. The officer testified that they went into the counselor's office, where the defendant told Rodriguez that he had assaulted Officer Crawford. Officer Rodriguez denied that the defendant told him that he had gotten into a fight after Officer Crawford struck the defendant.

Victor Middlebrook, an internal affairs investigator for the Department of Corrections, testified that on July 23, 1997, he interviewed the victim, Tommy Crawford, in the hospital. Afterwards, Mr. Middlebrook interviewed the defendant at Northwest Correctional Center. Mr. Middlebrook testified that he advised the defendant of his rights and that the defendant agreed to give a statement. Mr. Middlebrook advised the jury as to the content of the defendant's statement as follows:

> And once he arrived in the school building, he lit a cigarette, and began to smoke. And at that time, Officer Crawford, who was the officer assigned to the school building, had walked by him several times. And the last time he walked passed him, he made the comment to him, "You must be crazy for smoking in here," and Mr. Terry stated something back to him like, "I'm grown." And then, Officer Crawford was holding a cup of coffee in his right hand. And then, he took his left finger and pointed it in Mr. Terry's face and stated something to him. And at that point, that's when Mr. Terry hit the officer several times. Once, he stated, he knew at least to the head, and once to the chest. The officer then attempted to strike back, and when he did, the officer slipped and the coffee spilled and Mr. Terry stated that at that point is when he pushed him straight to the floor, and he did not get back up.

Mr. Middlebrook stated that the defendant returned to his pod nervous and scared, and told Officer Rodriguez that he had assaulted an officer. The defendant stated that he was the only one who hit Officer Crawford.

Officer Joel Foster of the Tennessee Department of Corrections testified that he was present when Victor Middlebrook interviewed the defendant. He stated that the defendant was advised of his rights after which the defendant admitted he was smoking in the school hallway and that he struck Officer Crawford at least once. Officer Foster denied that he had been asleep during the defendant's interview.

On his own behalf, the defendant testified that he was in the hallway of the school smoking a cigarette and that Officer Crawford was not paying any attention to him. He stated that the officer

was frustrated over the inmates wearing their hats, and that Officer Crawford did walk by him and then came back and told the defendant to put out the cigarette. The defendant testified that the officer showed some aggression toward him, put his finger in the defendant's face, and touched his head. He stated that he did not know whether the officer was going to strike him or not, so he basically reacted and struck him. The defendant denied that he told Officer Rodriguez that he assaulted Officer Crawford; however, he did say to Officer Rodriguez that he had gotten into a fight after the officer struck him first. Also, the defendant denied that he told Victor Middlebrook that he assaulted the officer. As to striking the officer, the defendant testified that he was basically defending himself.

## LEGAL ANALYSIS

The defendant asserts that the State committed a blatant violation of Rule 1003, Tennessee Rules of Evidence, and, thus, is entitled to a new trial. Further, the defendant contends that the trial court erred in permitting the State to use an oral statement in its proof and not introducing the original statement reduced to writing or tape-recorded. The State argues that the tape recording was not the best evidence of what the defendant said to Victor Middlebrook, but what the defendant actually said to Middlebrook. Further, if any error had been made with regard to Middlebrook's testimony, it was harmless error.

When a party, in a criminal or civil case, offers oral testimony of the contents of writing, in lieu of the writing itself, Tennessee Rules of Evidence 1001 governs Contents of Writings, Recordings, and Photographs. Rule 1001(3) of the Tennessee Rules of Evidence defines "original." An "original" of a writing or recording is the writing or recording itself, or any counterpart intended to have the same effect by a person executing or issuing it. Rule 1004 provides that the original is not required, and other evidence of a writing, recording, or photograph is admissible if:

> (1) All originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith; or

> (3) At a time when an original was under the control of the party against whom offered, that party was put on notice by the pleadings or otherwise that the contents would be subject of proof at the hearing but does not produce the original at the hearing.

Also, Rule 1007 provides that contents of writings, recordings, or photographs may be proved by the testimony, depositions, or written admission of the party against whom offered, without accounting for non-production of the original.

To resolve this appellate issue, we must set forth the salient facts arising in two separate hearings, a motion to suppress and the trial testimony. On January 25, 1999, the trial court conducted a motion to suppress hearing to determine the admissibility of the defendant's statement to Victor Middlebrook. At this hearing, Officer Middlebrook testified that he advised the defendant of his rights, by a waiver form, which the defendant signed. Officer Middlebrook stated that he wrote down the defendant's statement, then gave the original to the defendant for review and corrections

-3-

if necessary. Officer Middlebrook testified that the defendant made several corrections, initialed the same and signed his name at the end of the statement. At the conclusion of the interview, Officer Middlebrook had the defendant read his statement onto a tape. Officer Middlebrook testified that the tape and the original statement were in Nashville, Tennessee, and would be available for the trial. Officer Middlebrook identified a copy of the defendant's statement over the defendant's objection that the copy was not the original. The State argued that they were not producing it for the truth of the statement contents but to establish that the defendant signed the statement. A copy of the statement was marked as Exhibit 3 during the hearing. Officer Middlebrook stated that the defendant did admit in his statement, "I was the only one who assaulted the officer. No one else was involved."

The defendant testified that he gave a voluntary statement to Officer Middlebrook, but Exhibit 3 is not the original statement he gave to the officer. The defendant denied that he told Officer Middlebrook that he assaulted the officer. The defendant denied making the initials on the copy of the statement but acknowledged his signature at the end of the statement. The defendant stated that the taped version of his statement would contain his denial of assaulting the correctional officer. The trial court denied the motion to suppress the statement on the basis that the proof in the hearing did not match the allegations set forth in the motion.

On February 17, 1999, the defendant's trial commenced. The record reflects that when Officer Middlebrook was asked to relate to the jury what the defendant said in his statement, the defendant objected on the basis that the tape was the best evidence. The State countered that it did not plan to introduce any statement but would rely on what the defendant told Officer Middlebrook. The tape could not be located. With reference to the missing tape, Officer Middlebrook testified that Nashville could not find it but that he had a copy of the transcript of the tape. Officer Middlebrook stated that a copy of the transcript was furnished to the defendant. Officer Middlebrook testified that his director was willing to come to court and explain why the tape was missing. The transcriptionist, who transcribed all tapes, left the department in a hostile situation, and it was believed that she might have destroyed some tapes. In cross-examination, Officer Middlebrook was asked:

Q. If the tapes are gone, then how do we know that these transcriptions are from those tapes other than your word?

A. I guess that's all you have to go with right now is my word, Sir.

From our review of the facts in this record, we find that the trial court did not commit error in permitting the State to have Officer Middlebrook testify orally as to the defendant's statement of July 23, 1997. If the State elects to have a witness testify orally as to the contents of a defendant's confession and/or admission against interest in lieu of the actual writing or recording, that is its prerogative. Tenn. R. Evid. 1007. However, this is predicated on the fact that the defendant has a copy of the statement, whether it be in writing, a transcript of a tape recording, or a copy of the tape itself. In this case, a transcript of the statement was provided to the defendant before trial. In addition, the original tape was lost. The record reflects that the defendant vigorously cross-examined the State witness at the trial concerning the facts surrounding the taking of the defendant's statement

and as to why the tape was missing. Other than the statement, two correctional officers, Joel Foster and Lewis Rodriguez, testified that the defendant admitted assaulting a correctional officer. Likewise, the jury had the benefit of the defendant's testimony that he did not make a statement that he assaulted a correctional officer but was engaged in a fight. The credibility of the witnesses as to this issue was resolved in favor of the State. If there was any error in permitting the oral statement without the original taped recording, it was, therefore, harmless. T.R.A.P. 36(b); *State v. David E. Walton,* No. 02C01-9501-CC-00007, 1995 WL 472920, at *3 (Tenn. Crim. App. Aug. 9, 1995), reversed on other grounds, 958 S.W.2d 724 (Tenn. 1997).

The trial court's judgment is affirmed.